Matter of I.T. v C.R. (2006 NY Slip Op 52016(U))

[*1]

Matter of I.T. v C.R.

2006 NY Slip Op 52016(U) [13 Misc 3d 1227(A)]

Decided on October 10, 2006

Family Court, Onondaga County

Hanuszczak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 10, 2006

Family Court, Onondaga County
In the Matter of I.T. v. C.R., O.C.D.S.S.
P-01394-99/06D

APPEARANCES OF COUNSEL
Frank H. Hiscock Legal Aid Society, Michael J. Younis, Esq., of counsel, for petitioner; Joseph M. Kelly & Associates, Neil M. Gingold, Esq., of counsel, for Onondaga County Department of Social Services; Respondent C.R., pro se; Christopher S. Gaiser, Esq., Law Guardian.

Michael Hanuszczak, J.
On February 8, 2006, the petitioner, acting pro se, filed "Affidavit in Support of Motion to Vacate a Default Order of Affiliations [sic] and Request a Genetic Marker Test" accompanied by a Memorandum of Law. The motion was brought on by an Order to Show Cause.
At the initial appearance on March 21, 2006, the petitioner appeared together with his attorney, Frank H. Hiscock Legal Aid Society, Christine Waters, Esq., of counsel; and Joseph M. Kelly & Associates, Neil M. Gingold, Esq. of counsel, the attorney for the Onondaga County Department of Social Services, also appeared. Upon the filing of an Affidavit of Service showing attempted service with due diligence upon the respondent C. R., the Court granted the petitioner permission to effect alternate service under CPLR §308 (4), i.e., affix and mail service. The Court also appointed Christopher S. Gaiser, Esq. as Law Guardian for the subject child.
The matter proceeded to a hearing on July 20, 2006 with the petitioner having appeared together with his attorney; the attorney for the Onondaga County Department of Social Services having appeared; the Law Guardian having appeared; and the respondent C.R. having failed to appear. The attorney for the Onondaga County Department of Social Services indicated to the Court that the respondent's Public Assistance case was closed as of December 31, 1999 and that the Department could not locate her.
In his motion Affidavit, the petitioner stated that he was confined in the Onondaga County Justice Center and incapable of appearing voluntarily in court at the time of the original paternity proceeding and default order. The petitioner also stated that he is not the father of the subject child as the child's mother informed him that she was involved sexually with another man at the time of conception.
At the hearing, the petitioner testified in support of the allegations in his motion papers. The petitioner testified that he was incarcerated in 2001 when he learned of the Order of Filiation By Default and the support order and that he remained in prison until his release in February, 2006. He stated that he had filed two previous applications to vacate the default order of filiation but that he could not pursue them because he was incarcerated. The petitioner testified that he was never served with the paternity petition and that he was confined in the Justice Center on the date that the pleading was served on a person at his former place of business. He testified that he [*2]had seen the child only two times early in the child's life, when the mother brought the child to his place of incarceration. The petitioner also testified that the mother told him that she had engaged in sexual relations with another man at the time the child was conceived. The petitioner stated that he told the mother that he did not believe the child was his and that he intended to get a DNA test. He testified that the mother became angry with him and that he has had no contact with her or with the child since 2003 and does not know their whereabouts.
At the conclusion of the petitioner's testimony, the attorney for the Onondaga County Department of Social Services moved to dismiss the motion to vacate the default order, arguing that there was valid service of the paternity petition and of the subsequent order of filiation and order of support; and that the petitioner had not moved to vacate the orders within the statutory limits and should, therefore, be equitably estopped from reopening the proceeding.
The Law Guardian stated that he supported the County's motion to dismiss but he added that he believed that the petitioner had made prior good faith efforts to have the default order vacated.
Section 525 (c) of the Family Court Act states that a respondent shall have the right to move for relief from a default order of filiation within one year from the date the order was entered. In the instant proceeding, the Order of Filiation was filed and entered on September 28, 2000.
Petitioner's Exhibit A, which was received into evidence at the hearing, contains the petitioner's pro se Notice of Motion and Affidavit seeking to "suspend the order pending the outcome of a DNA test." This motion was received by the Onondaga County Family Court on July 27, 2001. A November 16, 2001 Family Court letter to the petitioner indicates that the motion paperwork was returned to him at an earlier date and that he was instructed to file a motion to vacate on the paperwork which was provided to him.
Petitioner's Exhibit A also contains a letter sent by the petitioner to the Onondaga County Office of Child Support Enforcement on March 29, 2002 regarding his objection to the administrative cost-of-living adjustment to the support order.
A review of the case file indicates that on December 28, 2001, the petitioner filed a pro se motion in Onondaga County Family Court to vacate the default order of filiation. However, this motion was dismissed by the Court for lack of jurisdiction since personal service was not effected upon the respondent.
The Court finds that the petitioner, who was incarcerated at the time of these applications, has demonstrated that he consistently disagreed with the default Order of Filiation and took steps to attempt to resolve the matter. The Court also finds that the petitioner has no relationship with the subject child, who is now seven years of age, and does not know the whereabouts of the child or her mother. The Court also finds that there is undisputed evidence that the mother told the petitioner that she had engaged in sexual relations with another man at the time the child was conceived.
Although the petitioner did not meet the statutory requirement for bringing a motion to vacate a default order within one year of its entry, "the general rule with respect to opening defaults in civil actions is not to be applied as rigorously in actions or proceedings involving the custody, care, and support of children" especially where, as here, the petitioner ascribes wrongdoing to the child's mother in naming him as the child's father. (Patricia J. v. Lionel S., 203 AD2d 979.)
[*3]
Indeed, the child's best interests are of paramount concern in the application of the doctrine of equitable estoppel in a paternity proceeding. (Louise P. v. Thomas R., 223 AD2d 592.) Although a number of years have passed since the entry of the instant Order of Filiation, the Court finds that equitable estoppel will not apply since it is in the best interests of this child to go forward with testing to determine if the petitioner is the child's father in view of the child's age and the fact that the petitioner has no relationship with her. (Cleophous P., Jr. v. Latrice M.R., 299 AD2d 936; Tiffany M.H. v. Greg G., 273 AD2d 919.).
Based upon these findings, the Court grants the petitioner's request to vacate the Order of Filiation and to reopen the paternity proceeding to conduct DNA testing. Accordingly, it is hereby
ORDERED, that the Order of Filiation By Default, filed and entered on September 28, 2000 is hereby vacated; and it is hereby
ORDERED, that the paternity proceeding shall be restored to the Family Court calendar in Part I for the purpose of further proceedings including DNA testing; and it is further
ORDERED, that the Order of Support for the subject child E.R., date of birth XXXXXXX, CSMS No. XXXXXXX is hereby suspended, effective February 8, 2006, pending further order of the Court.